# STATE OF LOUISIANA

## COURT OF APPEAL, THIRD CIRCUIT

## 11-1123

STATE OF LOUISIANA

VERSUS

RENEE TYLER

**********

**APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, DOCKET NO. 13646-10
HONORABLE ROBERT WYATT, DISTRICT JUDGE**
**********

**SYLVIA R. COOKS
JUDGE**

**********

Court composed of Chief Judge Ulysses Gene Thibodeaux, and Judges Sylvia R. Cooks and Elizabeth A. Pickett

**CONVICTIONS AND SENTENCES NULL AND SET ASIDE, REMANDED WITH INSTRUCTIONS.**

Edward K. Bauman
Louisiana Appellate Project
P.O. Box 1641
Lake Charles, LA 70602
(337) 491-0570
**ATTORNEY FOR DEFENDANT/APPELLANT**
   Renee Tyler

John F. DeRosier
District Attorney
Johnathan Blake, Carla SIegler, Karen C. McLellan
Assistant District Attorneys
1020 Ryan Street
Lake Charles, LA 70601
(337) 437-3400
**ATTORNEYS FOR STATE OF LOUISIANA/APPELLEE**

**Cooks, Judge**

## PROCEDURAL HISTORY

Renee Tyler (Defendant), was charged by bill of indictment with second degree murder, a violation of La.R.S. 14:30.1; and obstruction of justice, a violation of La.R.S. 14:130.1(A)(1). Following a jury trial, Defendant was convicted of the charged offenses. Defendant was sentenced to life imprisonment without benefit of parole, probation, or suspension of sentence on the charge of second degree murder. She was sentenced to serve two years on the charge of obstruction of justice, this sentence to run concurrently with the previously imposed sentence. Defendant appeals her convictions.

## FACTS

On the night of February 20, 2010, the Lake Charles Police Department received a call from Defendant reporting that she shot someone. The Defendant admitted to the officers on the scene that she shot the victim, Elliott Thomas (Thomas). Thomas was in a relationship with Defendant, and the two were living together at the time. She told one officer, "I did it. The f----- is not gonna mess with me anymore." She further admitted to hiding the gun in an undisclosed location where it would never be found. Defendant never disclosed the location of the weapon. Police found Thomas lying on the bedroom floor. He was transported to a local hospital where he later died as a result of a gunshot wound.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, we review all appeals for errors patent on the face of the record. After reviewing the record we find one such error concerning the sentence imposed for second degree murder.

Defendant's life sentence for second degree murder was not imposed at hard labor rendering the sentence illegally lenient. However, because we set aside the convictions as null and remand the case with instructions, this error is rendered moot.

## LAW AND DISCUSSION

Defendant contends the trial court erred in allowing defense counsel to withdraw the Motion to Appoint Sanity Commission as this was a further step in the prosecution of the case. We agree. Such action is prohibited by La.Code Crim.P. art. 642. Once the issue of mental capacity is raised and a sanity commission appointed, no further steps can be taken until the court determines Defendant has the mental capacity to proceed. The State suggests that this court remand the matter to the trial court for a *nunc pro tunc* hearing to determine whether an inquiry can be had regarding Defendant's competency. Should such a determination not be possible, or in the event the trial court holds a hearing and determines Defendant was not competent at the time of trial, a new trial should be ordered. The State further contends the issue of mental capacity to proceed was not raised by trial counsel but was raised *pro forma* by the Public Defender's Office when that office knew nothing of Defendant or her case. The State argues that the defense attorney who assumed representation of Defendant should not have been bound to a motion the evidence did not support and he did not file. Moreover, the State argues withdrawal of the motion should have been left to the trial counsel's discretion. Accordingly, the State contends, in the alternative, that a *nunc pro tunc* competency hearing is a waste of judicial resources and is not legally required.

Although in some cases such a remand for a *nunc pro tunc* hearing is possible, we find there is nothing in the record which the trial court could review

2

concerning a determination of Defendant's competency. A review of the record discloses that no mental health examinations were performed on Defendant and there is virtually no evidence of record regarding Defendant's competency at the time of trial.

At a March 17, 2010 preliminary examination held under docket number RC662-10 (second degree murder), the prosecutor informed the court that the case had not yet been before the grand jury and that he was concerned because the Public Defender's Office had requested appointment of a sanity commission on the obstruction of justice charge. Ted Hartman (Hartman), present as defense counsel at the preliminary examination, indicated he represented Defendant on both charges. He previously communicated to the trial court his intention to enroll as counsel in the case. The trial court relieved the Public Defender's Office of its representation at the hearing.

The prosecutor expressed concern that the request for a sanity commission would stay all proceedings. The court stated that a sanity commission hearing was set for March 24, 2010. Hartman moved to withdraw the sanity commission hearing, and the court, after initially expressing some hesitancy, agreed to proceed:

**HARTMAN:**

Your Honor, at this time I would like to withdraw the sanity commission hearing and reserve the right to invoke it again, if I feel necessary in my representation, because I've represented her for a short amount of time.

My concern is I want to be able to preserve her right to have the preliminary examination and, you know, -- I guess my position is that I would like to have the preliminary hearing today, if the State's prepared to go forward with that today.

**THE COURT:**

Well, before I even get Mr. Bryant's position on that, do we know whether or not Ms. Tyler has been seen by either of the physicians appointed by this Court?

3

**HARTMAN:**

I don't believe --

(Counsel and defendant confers.)

**HARTMAN:**

No, I didn't believe that she had been.

**THE COURT:**

Thinking out loud here, my concern was what if both doctors had seen her and ultimately it's determined that there is a problem. I wonder if we're going through useless exercises.

**BRYANT:**

Well, our only concern was that, procedurally speaking, if a sanity commission is appointed, then it stays all other proceedings. If he's withdrawing that request at this time without prejudice, -- which means I assume he may want to file it again in the future --

**HARTMAN:**

Correct.

**BRYANT:**

We can proceed with the preliminary examination, Your Honor.

**THE COURT:**

Okay.

**HARTMAN:**

That's what I'd like to do.

**BRYANT:**

Okay.

**THE COURT:**

Okay. Let's go. So you're indicating you're ready to proceed on the preliminary --

**BRYANT:**

Yes, Your Honor.

**THE COURT:**

Okay

The record indicates the Public Defender's Office filed a Motion to Appoint

Sanity Commission in docket number RC750-10 on the charge of obstruction of

justice. An Order Appointing Sanity Commission was signed by the judge on March 10, 2010, appointing Drs. Anderson and Robertson to serve on the commission. The contradictory hearing was set for March 24, 2010, but as discussed above, the "hearing" was withdrawn by defense counsel.

The Louisiana Code of Criminal Procedure Article 642 states (emphasis added):

> The defendant's mental incapacity to proceed may be raised at any time by the defense, the district attorney, or the court. When the question of the defendant's mental incapacity to proceed is raised, **there shall be no further steps in the criminal prosecution, except the institution of prosecution, until the defendant is found to have the mental capacity to proceed.**

Louisiana Code of Criminal Procedure Article 643 requires the trial court order a mental examination of Defendant when it has reasonable ground to doubt Defendant's mental capacity to proceed. Louisiana Code of Criminal Procedure Article 644 requires the court appoint a sanity commission to examine and report on the mental condition of Defendant within seven days after a mental examination is ordered. The examination was ordered in the present case, indicating the trial court found reasonable ground to doubt Defendant's capacity to proceed. *See State v. Strain*, 42,809 (La.App. 2 Cir. 12/5/07), 972 So.2d 1184, and *State v. Nomey*, 613 So.2d 157 (La.1993). Withdrawal of a motion to appoint a sanity commission has been found to be a further step in the prosecution which improperly removes the ultimate decision of competency from the trial court. *State v. Carney*, 25,518 (La.App. 2 Cir. 10/13/95), 663 So.2d 470, *Strain*, 972 So.2d 1184, *State v. Darnell*, 43,048 (La.App. 2 Cir. 8/13/08), 988 So.2d 870. Thus, we find allowing the case to move forward in the absence of a determination that Defendant had the capacity to proceed was legal error.

5

Having determined this error of law, we must now decide whether this error warrants a reversal of Defendant's convictions and sentences or a remand for a determination of whether a *nunc pro tunc* finding of competency remains possible. In *State v. Robinson*, 10-924 (La. 12/17/10), 50 So.3d 156, 156-57, the supreme court held:

> GRANTED. The judgment of the court of appeal vacating the defendant's conviction, habitual offender adjudication, and sentence is reversed. The State concedes the trial court failed to determine whether the defendant was competent to proceed prior to commencing jury trial; however, the State contends the matter should be remanded to the trial court for a determination of whether a *nunc pro tunc* finding of competency remains possible. We agree. Per *State v. Snyder*, 98-1078 (La.4/14/99), 750 So.2d 832, we remand the matter to the trial court to determine whether a meaningful inquiry can be had regarding defendant's competency. If it is found that a meaningful retrospective competency hearing is possible, we order the hearing to be conducted and the issue to be determined.

A closer look at the fifth circuit's summarization of the arguments in *Robinson* sheds light on the supreme court's subsequent ruling:

> In the brief filed by counsel, the defendant claims that the record is deficient concerning the defendant's competency and, therefore, his conviction and sentence should be set aside and the matter remanded for further hearings and/or a new trial. The defendant argues that, while the May 15, 2008 minute entry suggests that the defendant was found competent to stand trial, the May 15, 2008 transcript does not reflect a clear resolution on the defendant's competency. The defendant claims that the May 15, 2008 transcript, that cannot be further supplemented because of an equipment malfunction, is deficient on the trial court's determination of the defendant's competency to stand trial.
>
> In addition, the defendant argues that the May 14, 2008 letter from Doctors Salcedo and Richoux concerning the defendant's competency, which was sent as an exhibit with the supplement to the appellate record, does not indicate that the letter addressed to the trial judge at the courthouse was ever received because it is not stamped by the Clerk's Office for the Twenty-Fourth Judicial District Court. The record also does not reflect that the trial judge personally received or reviewed the May 14, 2008 letter.
>
> The defendant contends that, after the trial judge found that a bona fide question had been raised regarding the defendant's

6

competency, certain procedures had to be followed which the trial judge failed to do. The defendant admits that the record reflects that two doctors evaluated the defendant and found him competent to stand trial. However, the defendant argues that there is nothing in the record to show that the trial judge personally considered the doctors' evaluation, spoke to the doctors, or adjudicated the issue of the defendant's competency. The defendant asserts that the record reflects that "Barbara Johnson" made the determination of whether the defendant was competent to stand trial. The defendant argues that the propriety of the determination that the defendant was competent to stand is questionable and he is prejudiced because the scarcity of evidence available in the record leaves the correctness of the finding beyond the reach of appellate review.

The State claims that there were several hearings conducted concerning the defendant's competence. The State contends that, in one of those hearings, defense counsel stipulated that the diagnosis of the defendant was appropriate and accurate. According to the State, the index of the supplement to the appellate record contains a May 14, 2008 report from Doctors Salcedo and Richoux indicating the defendant "was examined and proved to be competent to stand trial." Alternatively, the State suggests the case should be remanded to determine if a *nunc pro tunc* hearing is possible in order to retrospectively determine his competence. The State notes that if the trial court finds that the defendant was competent, no new trial is required.

In his pro se rebuttal brief, citing *State v. Carney*, 25,518 (La.App. 2 Cir. 10/13/95), 663 So.2d 470, the defendant suggests that remand for a *nunc pro tunc* hearing is absurd. The defendant claims that upholding his conviction would deprive him of the protective measures mandated in LSA-C.Cr.P. art 641 et seq. and, thereby, deprive him of his due process rights to a fair trial. The defendant argues that the trial court erred in allowing further steps in the prosecution pursuant to LSA-C.Cr.P. art 642 after he raised the issue of his mental capacity to proceed. The defendant asserts that the trial court's doubt of his mental capacity to proceed was shown when the court granted his motion and appointed a sanity commission to examine and evaluate him. The defendant contends that his rights to have his competency to stand trial determined and ruled upon by the trial court cannot be waived or withdrawn by his defense attorney. Therefore, the defendant asks this Court to safeguard his due process rights to a fair trial by vacating his conviction and sentence and remanding his case for a new trial.

*State v. Robinson*, 09-371, pp. 4-6 (La.App. 5 Cir. 3/23/10), 39 So.3d 692, 695-96.

After discussing pertinent jurisprudence on the matter, the fifth circuit concluded:

> In the present case, we find, based upon the decisions in *State v. Nomey*, *State v. Perkins*, *State v. Seals*, *State v. Strain, supra*, that all proceedings after the appointment of the sanity commission, including the defendant's conviction and sentence, should be vacated because the record does not indicate that the trial judge ruled on the defendant's competency to proceed and the facts of this case do not allow for a retroactive competency hearing. In addition, we find, as the Louisiana Supreme Court found in *State v. Nomey, supra*, that this is the type of situation that LSA-C.Cr.P. art. 642 was designed to prevent. As the Louisiana Supreme Court found in *State v. Nomey, supra*, the fact that the defendant was competent to proceed based on the report of the sanity commission misses the point because, regardless of whether a retroactive determination of sanity could be made, the defendant was deprived of statutory protective procedures prior to his conviction and, therefore, he was deprived of his due process rights. *State v. Nomey*, 613 So.2d at 161. Thus, we vacate the defendant's conviction and sentence for simple burglary of a vehicle, and remand the case to the trial court and order that no further steps in the prosecution be taken until the defendant is evaluated, a hearing is conducted, and the trial judge rules on the defendant's capacity to proceed.

*Robinson*, 39 So.3d at 704.

In *State v. Snyder*, 98-1078, pp. 29-32 (La. 4/14/99), 750 So.2d 832, 854-56 (footnotes omitted), the Louisiana State Supreme Court held:

> Having found that the trial court abused its discretion in failing to investigate defendant's claims of incompetency, we must now determine the proper remedy. In the instant situation, we believe a *nunc pro tunc* hearing to determine whether defendant was competent at the time of his trial is appropriate *if a meaningful inquiry into defendant's competency can still be had.*
>
> In *State v. Nomey*, 613 So.2d 157 (La.1993), defendant was allowed to plead guilty to first degree murder one day after the members of a sanity commission conducted their examinations. In a motion for post-conviction relief, defendant argued the trial court's failure to conduct a hearing on the issue of his sanity prior to accepting his guilty plea violated his due process rights. The trial court denied the request for post-conviction relief, but on appeal the court of appeal ordered the trial court to conduct an evidentiary hearing to determine defendant's capacity to proceed at the time of the entry of the plea. After the hearing, the trial court held defendant had the capacity to proceed when the plea was entered. The court of

8

appeal affirmed this determination. This court held the court of appeal erred in remanding the case for a retroactive sanity hearing because the trial court's acceptance of the plea without first resolving the issue of defendant's competency violated defendant's due process rights. The court did, however, note the following:

> The present case is distinguishable from a case such as *State v. Bennett*, 345 So.2d 1129 (La.1977). In *Bennett*, the sanity hearing was held, but the examining physicians admitted that they could not be certain of their results without further clinical evaluation of defendant. The trial judge failed to order additional testing upon defendant's request. Defendant was thereafter found guilty as charged by a jury. On appeal, we remanded for another sanity hearing following a complete reexamination of the defendant. Unlike the present case, the defendant in *Bennett* did receive a hearing, at which the members of the sanity commission testified. Further, the defendant in *Bennett* alleged he suffered from mental retardation, which we found to be a more static condition than mental illness. *Hence, under certain limited circumstances, a retroactive determination of sanity may be permissible.* Likewise, we do not mean to foreclose the possibility of a *nunc pro tunc* competency hearing, *if a meaningful inquiry into defendant's competence can still be had*, in those cases where the trial judge ignores a bona fide doubt as to defendant's competence to stand trial, or the issue of competence is not raised at trial. *See Lokos v. Capps*, 625 F.2d 1258 (5th Cir.1980); *Zapata v. Estelle*, 588 F.2d 1017 (5th Cir.1979). Those cases are not applicable to the present case, however, since defendant did raise the issue of competence prior to trial and the trial judge agreed there was reasonable ground for a mental examination under La.Code Crim.P. art. 643.

*Nomey*, 613 So.2d at 162 n. 8. Thus, *Nomey* does not preclude the possibility of a *nunc pro tunc* competency hearing in a case such as the one *sub judice* where the trial judge ignored a bona fide doubt as to defendant's competence to stand trial.

The federal courts of appeals, although noting that *retrospective competency hearings are not favored*, have allowed *nunc pro tunc* hearings on the issue of competency if a meaningful inquiry into the defendant's competency can still be had. *See, e.g., Reynolds v. Norris*, 86 F.3d 796 (8th Cir.1996); *Watts v. Singletary*, 87 F.3d 1282 (11th Cir.1996); *United States v. Renfroe*, 825 F.2d 763 (3rd Cir.1987); *Zapata v. Estelle*, 588 F.2d 1017 (5th Cir.1979). The trial court is in the best position to determine whether it can make a retrospective determination of defendant's competency during his trial and sentencing. *Renfroe*, 825 F.2d at 767. The determination of whether a trial court can hold a meaningful retrospective competency

hearing is necessarily decided on a case-by-case basis. *Miller v. Dugger*, 838 F.2d 1530 (11th Cir.1988). *The State bears the burden to show the court that the tools of rational decision are available. Lokos v. Capps*, 625 F.2d 1258 (5 th Cir.1980).

*A "meaningful" determination is possible "where the state of the record, together with such additional evidence as may be relevant and available, permits an accurate assessment of the defendant's condition at the time of the original state proceedings." Reynolds*, 86 F.3d at 802. *Additionally, "[w]hen determining whether a meaningful hearing may be held, we look to the existence of contemporaneous medical evidence, the recollections of non-experts who had the opportunity to interact with the defendant during the relevant period, statements by the defendant in the trial transcript, and the existence of medical records.* The passage of time is not an insurmountable obstacle if sufficient contemporaneous information is available." *Reynolds*, 86 F.3d at 803 (citations omitted). The court in *Miller v. Dugger*, 838 F.2d 1530 (11th Cir.1988) noted that it had never given the district courts a list of factors that must be met in order to determine that a *nunc pro tunc* determination of competency is possible, but stated that relevant factors include time, availability of witnesses and the existence of evidence on the state record about the defendant's mental state at the time.

Because we believe a *nunc pro tunc* competency hearing may be possible to rectify the trial court's error in failing to make further inquiry into defendant's competency prior to trial, we will remand the case to the trial court for the sole purpose of determining whether such a hearing is now possible and, if so, to conduct such an evidentiary hearing. Because of the sparse testimony before the trial court, we envision the taking of additional testimony and evidence, including medical testimony relating to defendant's mental condition during that time prior to trial when he was allegedly unstabilized on his new medication and the records of examining physicians made during that time period, to allow the trial court to determine whether defendant was competent. *See Renfroe*, 825 F.2d at 767. If the trial court concludes defendant was competent, no new trial is required to be conducted. *United States v. Haywood*, 155 F.3d 674 (3rd Cir.1998). If the trial court finds a meaningful inquiry cannot be had, or if it determines after the hearing that defendant was not competent at the time of his trial, defendant shall be entitled to a new trial. *See United States v. Mason*, 52 F.3d 1286 (4th Cir.1995); *Zapata v. Estelle*, 588 F.2d 1017 (5th Cir.1979).(Emphasis added)

In *State ex rel. Seals v. State*, 00-2738 (La. 10/25/02), 831 So.2d 828, the court appointed a psychiatrist to examine the defendant on motion of defense counsel. The defendant was never examined, and no determination regarding competency was made prior to trial. In an application for post-conviction relief,

10

the defendant asserted a due process violation for the trial court's failure to conduct a competency hearing. The trial court held a series of hearings on the application for post-conviction relief, assessing, among other things, whether a meaningful evaluation of competency could be made under *Nomey* and *Snyder*. Testimony of the defense attorney and psychiatry experts was had which the supreme court summarized as follows:

> Woods reported little recollection of working on the defendant's case. Dr. Richoux indicated that he could make a determination *nunc pro tunc,* but acknowledged that his brief consultations with defendant did not allow him to glean the kind of information he would obtain in a competency assessment. Dr. Richard Richoux conducted brief interviews of defendant, each lasting between five and fifteen minutes, while defendant was on prison suicide watch, but never examined the defendant for the purpose of a competency evaluation. Dr. Richoux agreed that a competency evaluation was certainly different from the visits he conducted with the defendant. Without firsthand knowledge of the defendant's mental condition, Dr. Richoux's testimony drew extensively from his retrospective reading of defendant's trial testimony. Furthermore, Dr. DePrado concluded that no retroactive determination was possible given the brevity of the consultations in 1993 and the lack of other information. The defendant contends that the state provided only scant evidence and has failed to meet its burden of proving that there was enough evidence to make a retroactive determination.

*Id.* at 831-32.

The trial court determined it could not retroactively determine the defendant's competency to stand trial. The supreme court agreed, discussing the two options, *nunc pro tunc* hearing or nullification of the conviction and sentence, as follows:

### Nunc Pro Tunc Hearing

> In certain instances, a *nunc pro tunc* hearing on the issue of competency is appropriate "if a meaningful inquiry into the defendant's competency" may still be had. *Snyder* at 854. In such cases, the trial court is again vested with the discretion of making this decision as it "is in the best position" to do so. *Id.* at 855. This determination must be decided on a case-by-case basis, under the guidance of *Nomey*, *Snyder*, and their progeny. *Id.* The state bears the burden in the *nunc pro tunc* hearing to provide sufficient evidence for

the court to make a rational decision.  *Id.* Thus, we must determine first if a meaningful retrospective competency hearing can be held in the instant case or whether the only option to remedy the situation is nullification.

The allowance of a determination *nunc pro tunc* in cases such as these was first recognized in *State v. Snyder*.  In *Snyder*, the record gave no basis upon which a reviewing court could determine if the trial court properly inquired into the defendant's competence.  Factors which a court may consider to conduct a proper inquiry are known as the *Bennett* factors and include:

> [W]hether [t]he [defendant] is able to recall and relate facts pertaining to his actions and whereabouts at certain times;  whether he is able to assist counsel in locating and examining relevant witnesses;  whether he is able to maintain a consistent defense; whether he is able to listen to the testimony of witnesses and inform his lawyer of any distortions or misstatements; whether he has the ability to make simple decisions in response to well-explained alternatives; whether, if necessary to defense strategy, he is capable of testifying in his own defense; and to what extent, if any, his mental condition is apt to deteriorate under the stress of trial.

*State v. Bennett*, 345 So.2d 1129, 1137 (La.1977).  This court, in reviewing the record in *Snyder*, found no evidence that the trial court considered any of the *Bennett* factors after defendant's competency was raised.  However, in *Snyder*, there was considerable evidence, both psychiatric and lay testimony, regarding the defendant's state of mind.  In contrast, there was no affirmative evidence that the trial judge in the instant case conducted any investigation into defense allegations other than signing the order for the appointment of a psychiatrist.

In *State v. Franks*, 391 So.2d 1133 (La.1980), *State v. Berry*, 391 So.2d 406 (La.1980), and *State v. Hicks*, 286 So.2d 331, 333 (La.1973), the trial courts granted the defendants psychiatric examinations, which fell short of a request for a full-blown sanity commission, and ruled on the merits of whether a reasonable ground existed for appointment of a sanity commission.  The order in the instant case was never seen to fruition as in *Franks*, *Berry*, and *Hicks*.

We find the rule of Article 642 is broad enough to encompass situations in which the trial court may appoint a mental health expert (such as *Franks* and *Berry*) as well as those occasions in which the court must appoint a sanity commission because reasonable grounds exist for doubting the defendant's competency.  Having signed the motion, the court clearly erred as a matter of law under La.Code Crim. Proc. art. 642 by proceeding to trial without making any assessment of defendant's capacity to proceed.  Finding that the prosecution of the

instant case should have been stayed to properly determine defendant's capacity, we now turn to a determination of whether the exception to nullification applies in this case.

In order for the exception to nullification to be applicable, we must find that a meaningful retrospective determination of competence can now be made. The evidence is so scant that the district court correctly ruled that it could not cure the error by ordering a *nunc pro tunc* determination because, in the instant case, we can only guess from the scant evidence in the record that the trial judge found a bona fide issue regarding defendant's Motion for Psychiatric Evaluation. We agree with the defendant's argument that a meaningful determination of defendant's competence cannot now be made.

### *Nullification*

Significantly, *Nomey* and the present case differ in some factual respects but also raise significantly similar legal issues. In *Nomey*, the defense explicitly petitioned to have a sanity commission appointed under the authority of La.Code Crim. Proc. art. 643, and the trial court granted the motion, appointing the requisite two doctors to examine the defendant. As we noted in *Nomey*, since the trial court ordered the examination, it must have found reasonable grounds upon which defendant's mental capacity to proceed was doubted. However, in the instant case, the trial court did not appoint a sanity commission but rather ordered an Article 643 preliminary inquiry before reaching the "reasonable grounds" issue. A trial court's preliminary inquiry of this nature does not constitute the unilateral conducting of a sanity hearing for the purposes of La.Code Crim. Proc. art. 646. *State v. Martin*, 00-0489 (La.9/22/00), 769 So.2d 1168, 1169-70 (*per curiam*). Even though the present case does not present a situation where a sanity commission was either explicitly requested or deemed necessary by the trial court, *Nomey* applies if a meaningful retrospective determination of defendant's capacity cannot be made from the record.

The district court on the instant motion for post conviction relief found insufficient evidence to allow a retroactive competency hearing. We agree with the district court's determination that the facts of the instant case do not allow a retroactive competency hearing. Accordingly, we affirm the judgment of the district court.

*Seals*, 831 So.2d at 833-35.

In *State v. Juniors*, 05-649, p. 14 (La.App. 3 Cir. 12/30/05), 918 So.2d 1137, 1145, *writ denied*, 06-267 (La. 9/15/06), 936 So.2d 1257, *cert. denied*, 549 U.S. 1226, 127 S.Ct. 1293 (2007), in considering whether the defendant's conviction

13

should result in nullification or a *nunc pro tunc* hearing, this court discussed *Snyder* and held:

> In the present case, Defendant was examined by the two members of the sanity commission. Additionally, the record indicates that Defendant may have been evaluated by other mental health experts, given defense counsel's statements at a hearing on July 31, 1998, that an "ex-parte motion for funds for psychiatric experts" had already been granted, that a forensic social worker that had been ordered to conduct the investigation was no longer employed by the clinic being used, and that an order substituting a replacement would be presented to the court. Thus, there may be information regarding Defendant's competency that is available to the trial court that is not contained in this appellate record. Accordingly, the trial court may be able to make a retrospective determination regarding Defendant's competency at the time of trial.

> For these reasons, we remand this case to the trial court for the sole purpose of determining whether such a hearing is now possible and, if so, to conduct such an evidentiary hearing. If the trial court concludes that Defendant was competent, no new trial is required. If the trial court finds a meaningful inquiry cannot be had, or if it determines after the hearing that Defendant was not competent at the time of his trial, Defendant is entitled to a new trial. *See Snyder*, 750 So.2d 832; *Mathews*, 809 So.2d 1002.

In the instant case, unlike *Juniors*, there is nothing in the record for the trial court to review and make any retroactive determination regarding Defendant's mental competency to stand trial. While the language employed in *Snyder* indicates the issue of whether a retroactive determination of competency can be made is best handled by the trial court, the *Snyder* court stated, "[b]ecause we believe a *nunc pro tunc* competency hearing may be possible to rectify the trial court's error in failing to make further inquiry into defendant's competency prior to trial, we will remand the case to the trial court for the sole purpose of determining whether such a hearing is now possible and, if so, to conduct such an evidentiary hearing." *Snyder*, 750 So.2d at 855. Thus, the language in *Snyder* at least implies that the reviewing court must first determine whether a retroactive

determination of competency is a possibility before remanding to the trial court to ultimately decide the issue.[1]

In the instant case, the trial judge, by granting the motion seeking appointment of a sanity commission, apparently found there was reasonable ground for a mental examination of Defendant. Although a sanity commission was appointed to examine Defendant, the record indicates that she never met with the appointed doctors. There is virtually no evidence on the record concerning Defendant's competency at the time of trial leaving the trial court nothing to review *nunc pro tunc*. We therefore find that Defendant's convictions and sentences are null, and set aside, and it is ordered that this matter is remanded to the trial court with instructions to comply with La.Code Crim.P. arts. 641-649.1, prior to taking any further steps toward prosecution.

**CONVICTIONS AND SENTENCES NULL AND SET ASIDE, REMANDED WITH INSTRUCTIONS.**

---

[1] This court addressed a similar issue in *State v. Washington*, an unpublished writ bearing docket number 06-459 (La.App. 3 Cir. 7/5/06). After a sanity commission was ordered, defense counsel requested to vacate the commission; the request was granted by the trial court. The defendant subsequently entered guilty pleas to various offenses. The record indicated that relator was never taken to see any of the appointed members of the sanity commission. Additionally, there was no indication in the materials filed with this court that the record contained any medical information concerning relator's mental status which would allow for a determination of his mental condition at the time of his plea. In that case we held:

> **WRIT GRANTED AND MADE PEREMPTORY:** The trial court was in error in allowing Relator to withdraw his request for appointment of a sanity commission prior to determining his mental capacity to proceed. La.Code Crim.P. art. 641. Accordingly, Relator's conviction and sentence are null, and set aside, and it is ordered that this matter is remanded with instructions to comply with La.Code Crim.P. arts. 641-649.1, prior to taking any further steps toward prosecution. *See State ex rel. Seals v. State*, 00-2738 (La. 10/25/02), 831 So.2d 828, *writ denied*, 520 U.S. 1199, 117 S.Ct. 1558 (1997) and *State v. Juniors*, 05-649 (La.App. 3 Cir. 12/30/05), 918 So.2d 1137.